971 F.2d 548
 UNITED STATES of America, ex rel. the PRECISION COMPANY,
Plaintiff-Appellant,
v.
KOCH INDUSTRIES, INC.; Koch Exploration Co.; Koch
Pipeline, Inc.; Koch Services, Inc.; Koch Gathering
Systems, Inc.; Minnesota Pipe Line Co.; Quanah Pipeline
Corp.; Quivira Gas Co.; Koch Oil Co. of Texas, Inc.; Gulf
Central Storage & Terminal Co. of Nebraska; Southwest
Pipeline Co.; Chaparral Pipeline (NGL) Co.; Gulf Central
Pipeline Co.; Kogas, Inc., Defendants-Appellees.
 No. 91-5062.
 United States Court of Appeals,
Tenth Circuit.
 July 27, 1992.
 
 J. David Jorgenson (G.W. Turner III and P. Scott Hathaway with him, on the brief) of Conner & Winters, Tulsa, Okl., for plaintiff-appellant.
 Robert L. Howard of Foulston & Siefkin, Wichita, Kan. (James M. Armstrong of Foulston & Siefkin, Wichita, Kan., Clyde A. Muchmore of Crowe & Dunlevy, Oklahoma City, Okl., with him, on the brief) for defendants-appellees.
 Before BALDOCK and BRORBY, Circuit Judges, and BELOT,* District Judge.
 BRORBY, Circuit Judge.
 
 
 1
 Precision Company (Precision) appeals the dismissal of its qui tam action for lack of subject matter jurisdiction. Fundamentally, this appeal involves the determination of circumstances under which a qui tam plaintiff must demonstrate itself to be an original source under the False Claims Act (FCA), 31 U.S.C. § 3729 et seq. (1988). Applying the plain language of relevant statutory provisions to the circumstances of this action, we conclude Precision must qualify as an original source. We further conclude Precision has failed to so qualify, and therefore affirm the district court's dismissal.
 
 Overview
 
 2
 Precision filed its complaint to recover, on behalf of the United States, civil penalties and damages from Defendant companies that allegedly filed false claims with the government. The complaint was grounded upon the factual premise that Defendants, by deliberate and systematic mismeasurement, had understated to the United States the quantity of crude oil and natural gas produced from Federal and Indian lands. The complaint was grounded upon the legal premise that Defendants, by the use of under-measurements, had presented false claims to the United States. The alleged false claims represent the difference between the mineral royalties actually reported and those which Defendants should have reported.
 
 
 3
 Precision commenced this action as a qui tam plaintiff pursuant to 31 U.S.C. § 3730(b). Section 3730(b) authorizes a person to bring a civil action in the name of and on behalf of the United States against a person who has submitted a false claim to the Government as defined by 31 U.S.C. § 3729(a). However, the statute also provides that no court shall have jurisdiction over a qui tam action based upon the public disclosure of allegations or transactions unless the qui tam plaintiff is an original source of the publicly disclosed information. See 31 U.S.C. § 3730(e)(4)(A).
 
 
 4
 Defendants challenged the trial court's subject matter jurisdiction by producing evidence establishing Precision's complaint was based, at least in part, upon publicly disclosed information. The trial court ruled a qui tam plaintiff whose complaint is based in any degree upon publicly disclosed information must demonstrate it was an original source as defined by statute. The trial court then dismissed the qui tam action for lack of subject matter jurisdiction, concluding Precision was not an original source.
 
 
 5
 Precision now appeals asserting: 1) the trial court erroneously construed the applicable statute; 2) the trial court erroneously concluded Precision was not an original source; and 3) the trial court erroneously disregarded affidavits that would have established Precision's status as an original source.
 
 Analysis
 
 6
 The satisfaction of 31 U.S.C. § 3730(e)(4) is, as the language indicates, an issue of subject matter jurisdiction. See United States ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13, 18 (2nd Cir.1990); Houck ex rel. United States v. Folding Carton Admin. Comm., 881 F.2d 494, 503, 506 & n. 9 (7th Cir.1989), cert. denied, 494 U.S. 1026, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990); United States ex rel. LeBlanc v. Raytheon Co., 729 F.Supp. 170, 177 (D.Mass.), aff'd 913 F.2d 17 (1st Cir.1990). We review issues of subject matter jurisdiction de novo.[1] Thomas Brooks Chartered v. Burnett, 920 F.2d 634, 641 (10th Cir.1990). Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction. Penteco Corp. v. Union Gas System, Inc., 929 F.2d 1519, 1521 (10th Cir.1991). Therefore, Precision, the party invoking federal jurisdiction in this case, must "allege in [its] pleading the facts essential to show jurisdiction," and "must support [those facts] by competent proof." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); see also Penteco, 929 F.2d at 1521.
 
 I. FCA Jurisdictional Requirements
 
 7
 We begin our analysis with an examination of 31 U.S.C. § 3730(e)(4), which provides:
 
 
 8
 (e) Certain actions barred.--
 
 
 9
 ....
 
 
 10
 (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
 
 
 11
 (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.
 
 
 12
 "[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); see also FDIC v. Canfield, 967 F.2d 443, 445, (10th Cir.1992). In other words, "[u]nless the statutory language is ambiguous or would lead to absurd results, the plain meaning of the statute must control." United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1498 (11th Cir.1991); see also Glover Construction Co. v. Andrus, 591 F.2d 554, 559 (10th Cir.1979), aff'd 446 U.S. 608, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980).
 
 
 13
 "Based Upon"
 
 
 14
 At the threshold, the plain, unambiguous language of § 3730(e)(4)(A) states a qui tam action may be barred only if the action is "based upon" the public disclosure of "allegations or transactions." Precision would have us read this provision to apply only to actions based "solely" upon publicly disclosed information. We cannot countenance Precision's interpretation.
 
 
 15
 As a matter of common usage, the phrase "based upon" is properly understood to mean "supported by." In this context, an FCA qui tam action even partly based upon publicly disclosed allegations or transactions is nonetheless "based upon" such allegations or transactions. Congress chose not to insert the adverb "solely", and we cannot, because to do so would dramatically alter the statute's plain meaning.
 
 
 16
 Not only are we governed by the plain language of the statute, we must also be mindful that "statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." F & S Construction Co. v. Jensen, 337 F.2d 160, 161 (10th Cir.1964). To insert the term "solely" into § 3730(e)(4)(A) would impermissibly expand federal jurisdiction by allowing qui tam plaintiffs to avoid the more exacting "original source" requirement simply by asserting an additional count. In other words, with a little artful pleading, all qui tam plaintiffs could pass the jurisdictional threshold by fashioning complaints only "partly based" upon publicly disclosed allegations or transactions.
 
 
 17
 A restrictive interpretation of the threshold "based upon" test is also consistent with the dual purpose of this statute. Section 3730--Civil actions for false claims, has two basic goals: 1) to encourage private citizens with first-hand knowledge to expose fraud; and 2) to avoid civil actions by opportunists attempting to capitalize on public information without seriously contributing to the disclosure of the fraud. See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1154 (3rd Cir.1991). Consistent with these purposes, we believe the threshold "based upon" analysis is intended to be a quick trigger for the more exacting original source analysis. Two distinct inquiries are mandated by § 3730(e)(4)(A). Initially, the court must determine whether the action is "based upon the public disclosure of allegations or transactions." If the action is "based upon the public disclosure of allegations or transactions," then the court must determine whether the plaintiff qualifies as an "original source."[2] A fair reading of this statute in light of its dual purpose leads us to conclude Congress never intended a qui tam plaintiff to benefit in whole or in part upon publicly disclosed allegations or transactions unless that plaintiff can demonstrate he was an original source as defined by statute.
 
 
 18
 Finally, a more restrictive interpretation of "based upon" is consistent with practical considerations of judicial economy. It is one thing to expect the court to evaluate the quantity and quality of information in the public domain versus that possessed by the qui tam plaintiff after trial for purposes of fee determination;[3] it is quite another to expect a similar evaluation as part of a pre-trial jurisdictional inquiry. This type pre-trial inquiry would be onerous, impractical and ultimately would serve neither the interests of the parties nor the court.
 
 
 19
 For all the foregoing reasons, we conclude that a plaintiff whose qui tam action is based in any part upon publicly disclosed allegations or transactions is subject to the "original source" jurisdictional requirement.
 
 
 20
 "Original Source"
 
 
 21
 Once it is determined a qui tam action is based upon publicly disclosed allegations or transactions, the district court maintains jurisdiction only if "the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). "Original source" is expressly defined as
 
 
 22
 [A]n individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.
 
 
 23
 31 U.S.C. § 3730(e)(4)(B).
 
 
 24
 Two jurisdictional requirements are evident from the plain language of this provision: 1) a qui tam plaintiff must have direct and independent knowledge of the information on which the allegations are based; and 2) a qui tam plaintiff must have voluntarily provided such information to the government prior to filing suit.[4] These requirements are plain, unambiguous and require no further scrutiny.
 
 II. Precision's Showing
 
 25
 In light of our interpretation of § 3730(e)(4), we now evaluate Precision's showing to determine whether the statutory jurisdictional requirements have been satisfied.
 
 
 26
 "Based Upon"
 
 
 27
 Allegations that Defendants, by deliberate and systematic mismeasurement, stole crude oil and natural gas from Federal and Indian lands were publicly disclosed on three occasions prior to Precision filing this qui tam action. First, William Koch, Precision's majority shareholder, raised allegations of crude oil theft in three previous lawsuits. These allegations were embodied as RICO counts in civil suits instituted by William Koch in 1981, 1982, and 1985. See Oxbow Energy, Inc. v. Koch Indus., Inc., 686 F.Supp. 278 (D.Kan.1988); Koch v. Koch, 1989 WL 87624, No. 88-1320-K (D.Kan. July 19, 1989), aff'd 903 F.2d 1333 (10th Cir.1990); and Koch v. Koch Indus., Inc., 127 F.R.D. 206 (D.Kan.1989). Substantial identity exists between the RICO allegations and Precision's FCA allegations. Second, allegations of crude oil and natural gas theft were disclosed during a public hearing of the Senate Select Committee on Indian Affairs. Again, substantial identity exists between the allegations raised before the Senate Committee and Precision's qui tam allegations. Finally, the record reveals these same allegations were disclosed in numerous news releases.[5]
 
 
 28
 The record before us leaves no doubt Precision's complaint is "based upon" publicly disclosed allegations and Precision must therefore qualify as an original source in order to proceed with its claim.
 
 
 29
 "Original Source"
 
 
 30
 After carefully evaluating the record to determine whether Precision has shown by competent proof it qualifies as an original source, we conclude it has not. Precision has failed to meet the first jurisdictional requirement under the "original source" definition--the record is devoid of proof Precision possesses sufficient direct and independent knowledge of information on which its allegations are based.
 
 
 31
 Precision rests its claim on three classes of information: 1) information gathered by William Koch; 2) information gathered by William Presley from January 1988 to June 1988; and 3) information gathered by William Presley after becoming president of Precision in July 1988.
 
 
 32
 Notably, Precision is the qui tam plaintiff in the present action, not William Koch or William Presley. Precision did not come into existence as a corporate entity until June 1988. Precision has made no showing it has a legitimate claim to information gathered by Mr. Koch or Mr. Presley prior to its formation. Therefore, Precision cannot seriously argue it qualifies as an original source of the first two classes of information upon which its FCA allegations are based.
 
 
 33
 With regard to information gathered after Precision was formed--one affidavit, nineteen unverified statements, four interview summaries, and various "reports" regarding backgauging, tank strapping and gas sales meter runs--we conclude this information is best characterized as a continuation of, or derived from Mr. Presley's and Mr. Koch's individual investigations. Comparing this third class of information to the first two classes, the information procured by Precision is weak, informal and strikingly redundant. Precision's "independent" information does not convince us it possesses the requisite direct and independent knowledge of the information on which its FCA allegations are based.
 
 
 34
 Having concluded Precision's FCA complaint is "based upon" publicly disclosed allegations, and having concluded Precision failed to show it qualifies as an original source, we AFFIRM the district court's dismissal of Precision's complaint for lack of subject matter jurisdiction.
 
 
 
 *
 The Honorable Monti L. Belot, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Because there is "no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Sherman v. American Fed'n of Musicians, 588 F.2d 1313, 1314 (10th Cir.1978) (citing Schramm v. Oakes, 352 F.2d 143 (10th Cir.1965)), cert. denied, 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979). "[T]he trial court may gather evidence on the question of jurisdiction by affidavits or otherwise in an effort to determine the facts as they exist." Schramm, 352 F.2d at 149. Factual findings made by the trial court on the question of jurisdiction will not be disturbed unless clearly erroneous. Sherman, 588 F.2d at 1314
 
 
 [2]
 These two inquiries should not be collapsed. The district court was absolutely correct in concluding the "unless" clause of this provision is not implicated until the "based upon" issue is resolved. Precision asserts United States ex rel. LaValley v. First Nat'l Bank of Boston, 707 F.Supp. 1351 (D.Mass.1988), as authority for the proposition that an independent investigation which renders additional information is sufficient to satisfy the "based upon" test. However, we disagree with the Le Valley court's analysis insofar as it collapsed the two separate inquiries of § 3730(e)(4)(A) and (B). The threshold "based upon" test explicitly refers, in the disjunctive, to publicly disclosed "allegations or transactions." The scope of this threshold test cannot reasonably be interpreted to include "information" derived from subsequent investigation
 
 
 [3]
 Precision asserts § 3730(d)(1) supports its interpretation that only actions solely based on public disclosures are potentially barred. We disagree. Although § 3730(d)(1) allows the court to determine fees in a qui tam action partly based on public information, § 3730(d)(1) is not a jurisdictional provision. Moreover, its application is limited to those cases in which the government proceeds. The government has elected not to proceed in the present case; therefore § 3730(d)(1) is not germane to this analysis
 
 
 [4]
 Because we are able to decide this case on the basis of these two explicit requirements, we do not address Defendants' assertion that Precision cannot be an original source because it is not an individual. Nor do we address the merits of a third requirement imposed by the Second Circuit. See Dick, 912 F.2d at 16 (additional requirement that a qui tam plaintiff must have directly or indirectly been a source to the entity that publicly disclosed the allegations)
 
 
 [5]
 Allegations disclosed via civil litigation, congressional hearings and the news media fall within the scope of public disclosure as contemplated by § 3730. 31 U.S.C. § 3730(e)(4)(A)