**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 18 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DEBRA A. SHAW; Sued as UNITED
STATES ex rel,

      Plaintiff-Appellee,

v.

AAA ENGINEERING & DRAFTING,
INC., a Utah corporation; WILBUR L.
BRAKHAGE, Supervisor; JANICE
KELLIN,

      Defendants-Appellants.

No. 98-6172

_____

DEBRA A. SHAW,

      Plaintiff-Appellee,

v.

AAA ENGINEERING & DRAFTING,
INC., a Utah corporation; WILBUR L.
BRAKHAGE, Supervisor; JANICE
KELLIN,

      Defendants-Appellants.

No. 98-6173
No. 98-6362

---

Appeal from the United States District Court
for the W. District of Oklahoma

John B. Hayes, of Hayes & Magrini, Oklahoma City, Oklahoma, for Defendants-Appellants.

Marilyn D. Barringer, Oklahoma City, Oklahoma (Micheal C. Salem, Norman, Oklahoma, with her on the brief) for Plaintiffs-Appellees.

Before **HENRY,** and **MURPHY,** Circuit Judges**,** and **KIMBALL,**[*]

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Defendants AAA Engineering & Drafting, Inc., Wilbur L. Brakhage, and Janice Keelin (collectively "Defendants") appeal from an Amended Order and Judgment on Attorneys' Fees and Litigation Expenses.  This court concludes that the district court did not abuse its discretion in its award of attorney's fees, expenses, and costs, and that the award of attorney's fees for post-judgment enforcement and collection activities was proper under the False Claims Act ("FCA").  This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

---

[*]Honorable Dale A. Kimball, District Judge, United States District Court for the District of Utah, sitting by designation.

II. FACTS AND PROCEDURAL HISTORY

In June 1997, the district court entered judgment following a jury verdict for plaintiff Debra Shaw in a consolidated FCA *qui tam* and wrongful discharge action and pendant state law wrongful discharge action. Shaw then moved for an award of attorney's fees, litigation expenses, and court costs on the FCA *qui tam* and wrongful discharge actions (collectively "fees and expenses"). Defendants agreed the FCA *qui tam* and wrongful discharge provisions both authorize the award of reasonable fees and expenses, but they disagreed as to the proper amount to be awarded.

Defendants appealed the judgment[1] and applied for an order staying execution on the judgment. In addition, Defendants asked that the stay on the judgment be entered immediately but that the amount of the *supersedeas* bond[2] be set only after entry of judgment on fees and costs. Shaw opposed a stay without a bond and asked the district court to deny Defendants' application to stay

---

[1]In the related merits appeal, also decided today, this court affirmed the FCA *qui tam* and wrongful discharge portions of the underlying judgment. Although Shaw had prevailed on the state law claim below, that portion of the judgment was reversed on appeal. *See Shaw v. AAA Engineering and Drafting, Inc.*, __ F.3d. __, __, __ (10th Cir. 2000) ("*Shaw I*").

[2]"When an appeal is taken the appellant by giving a *supersedeas* bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal . . . . The stay is effective when the *supersedeas* bond is approved by the court." Fed. R. Civ. P. 62(d).

execution and to immediately set the amount of the bond. By October 1997, some three months later, the district court had not yet ruled on the motion for fees and expenses, and Defendants had not filed a *supersedeas* bond. Shaw commenced execution on the judgment and moved for a Writ of Garnishment. Defendants then moved for the immediate approval of a *supersedeas* bond and to quash the garnishment proceeding. In February 1998, the district court granted Defendants' motion for approval of the *supersedeas* bond and quashed the Writ of Garnishment.

In March 1998, the district court held a hearing to determine the proper amount of fees and expenses to be awarded. Shaw presented two expert witnesses, both of whom testified $175 per hour was a reasonable hourly rate for a plaintiff's attorney with the experience of Shaw's counsel in federal employment litigation. One witness also testified that both FCA *qui tam* and wrongful termination actions involve complex issues requiring substantial expenditures of time. Shaw's counsel also testified that this case was particularly difficult for her, in part because of the need for information and assistance from the government and because of the extensive document preparation involved. Defendants cross-examined each of these witnesses. Defendants also called an expert witness who testified that reasonable rates for the defense bar in Oklahoma were $100 to $125 per hour. This witness had not, however, examined

the specific facts of the underlying case and was thus unable to address its complexity.

After the hearing, the district court entered judgment in favor of Shaw for fees and expenses.[3] Shaw then moved to amend this judgment to include fees and expenses incurred after the date of her initial application for fees and expenses but before the district court's hearing on the application.[4] The additional fees and expenses sought included fees for time spent on post-judgment collection activities. Defendants opposed the portion of the request for additional fees and expenses based on post-judgment collection activities, but they did not request a second evidentiary hearing. The district court, without conducting a second hearing, granted Shaw's motion. Noting that Defendants contested the award of additional fees but did not contest the reasonableness of the *amount* requested, the district court amended the judgment to include all the additional fees and expenses claimed by Shaw. Under the amended judgment, Shaw was awarded $87,829.00 in attorney's fees, $2267.34 in costs, and $7339.40 in expenses, for a total of $97,435.74 plus interest in the *qui tam*

---

[3]This award was for $76,882.75 in attorney's fees, $6653.90 in expenses, and $2267.34 in costs, for a total of $85,803.99 plus interest in the *qui tam* action, as well as $63,822.50 in attorney's fees, $1751.45 in expenses, and $2267.33 in costs, for a total of $67,841.28 plus interest in the wrongful discharge action.

[4]Shaw sought an additional $21,892.50 in attorney's fees and $1,371.00 in litigation expenses, for a total of $23,263.50.

action, as well as $74,768.75 in attorney's fees, $2267.33 in costs, and $2436.95 in expenses, for a total of $79,473.03 plus interest in the wrongful discharge action. Defendants appeal the amended fees and expenses judgment.

The FCA provides that a *qui tam* relator who successfully brings an FCA action shall receive an amount between twenty-five and thirty percent of the proceeds from the action and "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(2). Under the FCA wrongful termination provisions, a plaintiff is entitled to "all relief necessary to make the employee whole. Such relief shall include . . . litigation costs and reasonable attorneys' fees." 31 U.S.C. § 3730(h).

III. DISCUSSION

A. Reasonableness of Attorney's Hours and Rate

1) *Standard of Review*

Defendants argue the district court granted Shaw excessive attorney's fees. Specifically, they argue the district court should have 1) required a more detailed explanation by Shaw's counsel as to the number of hours spent on specific tasks; 2) given more weight to the disparity between the hours claimed by Shaw's counsel and the hours billed by Defendants' counsel; and 3) allowed Defendants to cross-examine Shaw's counsel concerning her fee agreement with Shaw.

This court reviews the district court's determination of the amount of attorney's fees to be awarded for an abuse of discretion. *See Wolfe v. New Mexico Dep't of Human Servs.*, 28 F.3d 1056, 1058-59 (10th Cir. 1994). A court abuses its discretion when it bases its decision on an erroneous conclusion of law or when there is no rational basis in evidence for its ruling. *See Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir. 1995).

2) *Number of Hours Spent on Specific Tasks*

Defendants contend the district court should have required Shaw's counsel to give a detailed analysis of her reasons for the amount of time she spent on specific tasks. For example, Shaw's counsel recorded thirteen hours for preparing suggested *voir dire* questions in the *qui tam* case, six hours for writing two Freedom of Information Act letters, approximately forty hours for responding to a summary judgment motion, and eight hours for drafting a complaint.

Shaw responds that she did present evidence explaining much of this time. For example, her expert witness testified that in preparing *voir dire* questions for a *qui tam* case, he would have to spend more time than in a typical employment law case, and that he was not surprised 13 hours were spent preparing *voir dire*. He also testified that six hours spent writing Freedom of Information Act letters was even less surprising. In addition, Shaw's counsel also offered some explanation for the time she spent drafting the *qui tam* complaint, noting the FCA

has specific requirements which she had to follow. Additionally, Defendants' counsel cross-examined Shaw's attorney, yet only questioned her briefly about the time spent on *voir dire* and not at all about time spent on the other matters now raised on appeal. Defendants themselves did not call any witnesses to testify that the amount of time spent on these tasks was excessive.

Shaw is entitled to "reasonable attorneys' fees" under both the *qui tam* and wrongful discharge provisions of the FCA. 31 U.S.C. § 3730(d)(2), (h). This court has previously noted that when examining an attorney's fee claim, the district court should examine the hours spent on each task to determine the reasonableness of the hours reported. *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) (reviewing award of attorney's fees under 42 U.S.C. § 1988). The district court, however, does not have to justify every hour allowed in awarding attorney's fees under federal statutes. *See Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). "[W]hat is reasonable in a particular case can depend upon factors such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side." *Ramos*, 713 F.2d at 554. The district court's superior perspective on the presence or absence of these particular factors in the underlying merits litigation counsels deference to the district court's decision as to whether the

number of hours claimed is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In this case, the district court reviewed Shaw's counsel's records and heard testimony that the posture and complexity of this case required substantial expenditure of time. The Defendants failed to meaningfully question this testimony. This court concludes the district court had a "sufficient basis for its determination that the claimed hours were reasonable," and there was no abuse of discretion in the award of attorney's fees for the hours claimed. *Malloy*, 73 F.3d at 1018.

3) *Comparing Counsels' Time*

In her initial fee request, Shaw's counsel claimed approximately 804 hours for prosecuting the underlying merits lawsuit, while Defendants' counsel billed approximately 425 hours for defending the action. Defendants argue the district court should have given more weight to this time difference, and that testimony by Shaw's counsel was not adequate to explain the amount of time which she recorded.[5]

Evidence of the hours expended by opposing counsel may be helpful in determining whether time expended on a case was reasonable, but the opponent's

_____

[5]Insofar as Defendants are arguing the district court did not compare the time recorded by the parties at all, this is incorrect. Defense counsel's time records were admitted at the March 1998 hearing.

time is not an "immutable yardstick of reasonableness." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) (reviewing attorney's fees award under 42 U.S.C. §1988). The district court had first hand knowledge of the complexity of the case and the voluminous number of documents Shaw, who had the burden of proof, presented at trail. *See Hensley*, 461 U.S. at 437. The district court did not abuse its discretion in finding counsel's hours reasonable in spite of the contrast with defense counsel's time.

4) *Hourly Rate*

The district court received into evidence the affidavit of Shaw's counsel, which indicated that Shaw's agreement with her counsel was for a contingency fee and that Shaw paid only costs and expenses. The affidavit thereafter refers to an hourly rate of $150. It would appear, however, that Shaw's counsel was explaining that $150/hour was her normal billing rate at the time of the fee arrangement, some two years antedating the affidavit and claim premised on a $175/hour rate.

After the admission of this affidavit, Defendants asked Shaw's counsel in cross-examination, "[Y]ou say in your affidavit that you had a contract with your client. What was that, please, ma'am, and did you bring it to court today?" Shaw objected to this line of questioning, arguing that the fee agreement was irrelevant

to a determination of a reasonable fee.  The district court sustained this objection, though without specifically stating the reasons for its ruling.

On appeal, Defendants argue that if the trial court had allowed them to address the terms of the representation agreement, this could have led to a revelation that the agreement reflected a rate of $150/hour.  This, Defendants argue, in turn might have convinced the district court to apply an hourly rate less than the $175/hour on which it ultimately settled.  The affidavit of Shaw's counsel, however, established that her regular hourly rate was $150/hour, the very rate Defendants suggest is the reason cross-examination on the fee arrangement should have been allowed.  Therefore, any error by the district court in sustaining Shaw's objection was harmless.  *See United States v. Rothbart*, 723 F.2d 752, 755 (10th Cir. 1983); Fed. R. Civ. P. 61 ("No error in either the admission or the exclusion of evidence . . . is a ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.").

B.  The Amended Judgment

1) *Standard of Review*

In the Order granting Shaw's Motion to Alter or Amend the Judgment on Attorneys' Fees, Costs, and Litigation Expenses ("motion to amend"), a portion of the fees awarded by the district court was for time spent in post-judgment

collection proceedings. Shaw's counsel's hours included time spent objecting to Defendants' motion to stay execution and preparing for execution and garnishment proceedings. Defendants argue on appeal the district court erred 1) in awarding Shaw attorney's fees for this time; and 2) in granting Shaw's motion to amend without conducting a second evidentiary hearing. This court reviews the district court's grant of attorney's fees for an abuse of discretion. *See Wolfe*, 28 F.3d at 1058-59. Factual resolutions are reviewed for clear error; the statutory interpretation and legal analysis supporting the district court's decision are reviewed *de novo*. *See id*.

2) *Award of Fees for Post-judgment Collection Activities*

There is no precedent in this circuit nor authority from other circuits resolving whether attorney's fees can be awarded under the FCA for post-judgment collection activities. Cases addressing claims for post-judgment fee awards under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988(b), and the citizen suit attorney's fee provision of the Clean Air Act, *id*. § 7604(d), however, are instructive. *See, e.g.*, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558-60 (1986).

The Civil Rights Attorney's Fees Awards Act states "the court, in its discretion, may allow . . . a reasonable attorney's fee." 42 U.S.C. §1988(b). The Clean Air Act citizen suit attorney's fee provision provides the court "may award

costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." *Id*. § 7604(d). Similarly, the FCA *qui tam* attorney's fees provision states that one who successfully brings an FCA action "*shall . . .* receive . . . reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(2) (emphasis added). The FCA wrongful discharge attorney's fees provision likewise states that a plaintiff "*shall* be entitled to all relief necessary to make the employee whole . . . [including] reasonable attorneys' fees." 31 U.S.C. § 3730(h) (emphasis added). All four provisions share the requirement that attorney's fees awards must be "reasonable." 31 U.S.C. § 3730(d)(2), (h); 42 U.S.C. § 1988(b); *id*. § 7604(d). The only significant difference between the FCA and the attorney's fees provisions in the other statutes is that the FCA provisions are mandatory on their face. *See* 32 U.S.C. § 3730(d)(2), (h).

Courts interpreting the Civil Rights Attorney's Fees Awards Act and the citizen suit attorney's fee provision of the Clean Air Act have consistently allowed attorney's fees for post-judgment enforcement and collection activities. *See*, *e.g.*, *Delaware Valley*, 478 U.S. at 558-60; *Wolfe*, 28 F.3d at 1059.[6]  In

---

[6]In addition, the courts have not limited post-judgment attorney's fees awards under the Civil Rights Attorney's Fees Awards Act to time spent securing non-monetary forms of relief. *See Balark v. Curtin*, 655 F.2d 798, 802-03 (7th Cir. 1981).  The *Balark* court upheld the award of fees for time spent litigating

(continued...)

*Delaware Valley*, the court noted that both of these statutory provisions were enacted to encourage citizen enforcement of important federal policies. *See* 478 U.S. at 560. The FCA is also intended to encourage citizen enforcement of important federal policies. Two of the FCA's main goals are to enhance the government's ability to recover losses resulting from fraud and to encourage individuals who know of government fraud to come forward with that information. *See* S. Rep. 99-345, at 1, 6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266, 5271; *United States ex rel. Precision Co. v. Koch Indus.,* 971 F.2d 548, 552 (10th Cir. 1992). The FCA attorney's fees provisions are central to the implementation of these policies. As noted in the FCA's legislative history, "[u]navailability of attorneys fees inhibits and precludes many private individuals, as well as their attorneys, from bringing civil fraud suits." S. Rep. 99-345, at 29 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5294.

We see no reason why the attorney's fees provisions of the FCA should be applied differently than those of the civil rights laws or the Clean Air Act. This court thus concludes that both FCA attorney fee provisions allow the award of

---

[6](...continued) collection procedures for a civil rights judgment, stating "[t]he compensatory goals of the civil rights laws would thus be undermined if fees were not also available when defendants oppose the collection of civil rights judgments." 655 F.2d at 803; *see also Powell v. Georgia-Pacific Corp.*, 119 F.3d 703, 707 (8th Cir. 1997).

attorney's fees for time spent in post-judgment collection activities.  *See* 31 U.S.C. § 3730(d)(2), (h).

3) *Failure to Hold a Second Evidentiary Hearing*

Defendants argue the district court erred when it did not conduct an evidentiary hearing on Shaw's motion to amend.  Defendants, however, did not request such an evidentiary hearing.  *See Robinson*, 160 F.3d at 1286 ("Ordinarily, a district court does not abuse its discretion in deciding not to hold an evidentiary hearing when no such request is ever made.")  Additionally, this court notes that in Defendants' response to Shaw's motion to amend, Defendants made no factual challenges which would have necessitated an evidentiary hearing.  Defendants instead asserted two purely legal issues: 1) that the district court had resolved all the matters presented in the motion to amend at the original March 13, 1998 hearing, and these resolutions became the law of the case and 2) the FCA does not authorize an award of attorney's fees for post-judgment collection activities.  An evidentiary hearing, however, was unnecessary to resolve these legal issues.  Defendants certainly did not assert below, as they do on appeal, that an evidentiary hearing was necessary to distinguish time spent on post-judgment collection activities from time which was not contested by Defendants or to allow Defendants the opportunity to cross-examine Shaw's counsel as to the reasonableness of the additional hours claimed.  The district

court therefore did not abuse its discretion in not conducting the hearing. *See id.*;

*King of the Mountain Sports, Inc. v. Chrysler Corp.,* 185 F.3d 1084, 1091 n.2

(10th Cir. 1999).

IV.  CONCLUSION

For the reasons stated above, this court  **AFFIRMS**  the district court's

Amended Order and Judgment on Attorneys' Fees and Litigation Expenses.